IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS –
HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT ( F TEXAS
FILED

MAY 1 2 2005

MICHAEL N. MILBY, CLERK OF COURT

| | |
|---|---|
| CYNTHIA M. DAVIS,<br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF TEXAS SYSTEM,<br>THE UNIVERSITY OF TEXAS SYSTEM<br>BOARD OF REGENTS, THE UNIVERSITY<br>OF TEXAS HEALTH SCIENCE CENTER<br>AT HOUSTON, MICHAEL MCKINNEY,<br>M.D., BEING SUED IN HIS INDIVIDUAL<br>AND OFFICIAL CAPACITIES, AND<br>CHARLES G. CHAFFIN, BEING SUED IN<br>HIS INDIVIDUAL AND OFFICIAL<br>CAPACITIES,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Civil Action No. H-05 -1719

## PLAINTIFF'S ORIGINAL COMPLAINT

### A. Parties

1.    Plaintiff CYNTHIA M. DAVIS is an individual who is a citizen and resident of Harris County, Texas.

2.    Defendant THE UNIVERSITY OF TEXAS SYSTEM is a governmental subdivision and state entity as defined under Texas law and it may be served with citation by serving its Vice Chancellor and General Counsel, Barry D. Burgdorf, located at 201 West 7th Street, Austin, Texas 78701, and copying the Office of the Attorney General.

3.    Defendant THE UNIVERSITY OF TEXAS SYSTEM BOARD OF REGENTS is the governing body of THE UNIVERSITY OF TEXAS SYSTEM and it may

be served with citation by serving its General Counsel, Barry D. Burgdorf, located at 201 West 7th Street, Austin, Texas 78701, and copying the Office of the Attorney General.

4.      Defendant THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON is a governmental subdivision and state entity operating within, and as a component of, THE UNIVERSITY OF TEXAS SYSTEM and it may be served with citation by serving Arlene Staller, its Chief Legal Officer, located at 7000 Fannin, Suite 1200, Houston, Texas 77030, and copying the Office of the Attorney General.

5.      Defendant MICHAEL MCKINNEY, M.D., THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON's Senior Executive Vice President and Chief Operating Officer, being sued individually and in his official capacity, may be served with process in his official capacity by serving Arlene Staller, Chief Legal Officer, located at 7000 Fannin, Suite 1200, Houston, Texas 77030, and copying the Office of the Attorney General.  He may be served in his individual capacity at his regular place of work located at 7000 Fannin, Suite 1721, Houston, Texas 77030.

6.      Defendant CHARLES G. CHAFFIN, THE UNIVERSITY OF TEXAS SYSTEM's Director of Audits and System-wide Compliance Officer, being sued individually and in his official capacity, may be served with process in his official capacity by serving Vice Chancellor and General Counsel, Barry D. Burgdorf, located at 201 West 7th Street, Austin, Texas 78701, and copying the Office of the Attorney General, and copying the Office of the Attorney General.  He may be served in his individual capacity at his

2

regular place of work located at 201 West 7th Street, Austin, Texas 78701.

B.  Jurisdiction

7.      This Court has jurisdiction herein because the action arises under the First and Fourteenth Amendments of the United States Constitution and pursuant to 42 U.S.C. §1983.

C.  Facts

8.      The University of Texas Health Science Center at Houston ("UTHSC-H") was created by the University of Texas System ("UT-System") Board of Regents ("Regents") and supported by the Texas Legislature in 1972.  Its components include the Dental Branch, the Graduate School of Biomedical Sciences, the Medical School, the School of Public Health, the School of Nursing, the School of Health Information Sciences, the UT Harris County Psychiatric Center, and the Brown Foundation Institute of Molecular Medicine for the Prevention of Human Disease.

9.      Plaintiff began working at UTHSC-H as an IT auditor in 1996.  She had a stellar performance history, and eventually left the Audit department to work elsewhere at UTHSC-H.  However, she was highly recommended to rejoin Audit which she did on June 16, 2003.

10.     Around this time, UT-System was looking to restructure portions of the UTHSC-H Audit department.  Charles Chaffin ("Chaffin"), UT-System Director of Audits and System-wide Compliance Officer, announced that audit personnel who lacked professional certifications would be terminated.  Plaintiff possessed such qualifications;

3

however, several auditors were terminated per this policy.

11.     Of import, no other UT institution had implemented such a rule. Additionally, months later, Chaffin and others hired for the vacated Audit positions and filled some with personnel who lacked professional certifications.

12.     In late June 2003, an announcement was made that an Assistant Director of Audit for UTHSC-H had been created. Sharon Corum ("Corum"), the Director of UTHSC-H Audit, communicated the creation of the new position to her team and also obtained permission from Dr. James Willerson ("Willerson"), UTHSC-H President, to waive the requirement that a search committee be used to find applicants for the job.

13.     In late August 2003, the Assistant Director of Audit position was posted. Plaintiff was the most qualified employee for the position, and was also the only Audit employee to apply for the job.

14.     Near this time in August 2003, the UTHSC-H Vice President for Facilities Planning requested that his department be reviewed for allegedly viewing pornography on work computers during work hours.  Plaintiff was involved by UT-System in the initial investigation which revealed pornography on several computers inspected, including indicia that certain employees had intentionally accessed the pornography.

15.     The preliminary findings were then presented to Tex Martin ("Martin"), Inspector with UT-System Office of the Director of Police.  Martin gave the data to Dr. Michael McKinney ("McKinney"), the UTHSC-H Chief Operating Officer and Executive

4

Vice President who presented the findings at a subsequent meeting at which Martin and Plaintiff were present.

16.    On August 29, 2003, McKinney ordered Plaintiff to fully investigate the pornography usage on employees' computers. He stated that he was going to terminate all employees found to have accessed pornography (including child pornography) on their work computers. Plaintiff was pleased to hear this in light of the way that Willerson had treated prior complaints of pornography abuse at UTHSC-H.

17.    Plaintiff then began confiscating computers and analyzing them for pornography. All but one of the computers contained information indicating intentional access of pornography, including some with child pornography, which included photographs and videos of young females having sex with what appear to be older men.

18.    Plaintiff had difficulty picking up some of the computers, and even found evidence that, just prior to her picking up one computer, an employee downloaded a program called "evidence eliminator" to get rid of the pornography on the machine.

19.    McKinney asked Plaintiff to schedule a meeting on September 2, 2003 in which they would discuss the investigation progress. Plaintiff contacted McKinney's office on that date but he was "not available" and he never returned Plaintiff's messages to contact him. On or around this date, Plaintiff heard that McKinney wished to end the investigation and take no further action. To this end, Plaintiff received a call from Mike Jimenez ("Jimenez"), UTHSC-H HR Manager, asking that she expedite the return of various

physicians' computers which had been confiscated -- even though all testing and analysis had not yet been completed.

20.     Not having heard from McKinney or anyone else in management concerning the pornography investigation, Plaintiff continued the investigation by providing to McKinney lists of physicians whose computers contained pornography. She also tried to provide to him photographs and other data contained on the various hard drives, but was told that "no one else should have to view such offensive material."

21.     Then, on or about September 9, 2003, Plaintiff requested from Corum to be reassigned off the pornography investigation because she felt that it created a hostile work environment, she felt denigrated as a women, she was receiving "heat" from others about doing her job, and because she felt that UTHSC-H was being non-responsive to the investigation. Plaintiff further conveyed that she had sought help from the EAP ("Employee Assistance Program") in order to cope with the stress of dealing with the pornography and receiving no support in the investigation from UTHSC-H or UT-System.

22.     Plaintiff applied for the Assistant Director of Audit position on or about September 11, 2003. As set forth above, she was the most qualified for the position and the only Audit employee to apply for said position.

23.     During this time, there was increased dissension among UTHSC-H physicians due to the investigation and the alleged intrusion into their privacy rights. Plaintiff received little to no support from upper management. The investigation lost momentum after Plaintiff

asked not to be further involved and it appeared to her that matters were being swept under the rug.

24.     On October 12, 2003, Plaintiff wrote to President Willerson and Mark Yudof ("Yudof"), UT-System Chancellor, to complain about what she believed were "unethical and possible illegal activities at UT-Houston." In the letter, Plaintiff detailed the history of the pornography investigation and her interaction with McKinney and others.

25.     She also reported that since communicating elaborated findings to McKinney he refused to meet with her to discuss same. The findings included the fact that certain physicians had viewed what Plaintiff believed to be "teen" sites which "constituted child pornography."

26.     One such example involved a pediatric dentist whose computer files indicated that he viewed "teen" sites every morning from 6:00 a.m. to 6:30 a.m. during the week of activity reviewed by Plaintiff. One of the movies found on his computer was of a man ejaculating into a teenage girl's mouth – who was wearing braces. Plaintiff complained that such activity on the part of a pediatric dentist before seeing child patients was "possibly criminal" and "disgusting and disturbing."

27.     Plaintiff went on to detail for Willerson and Yudof the child pornography laws, and many past examples of other physicians possessing what she considered to be child pornography on their computers, or other reprehensible sexual acts, including a faculty member producing videos of himself masturbating in his UTHSC-H office and distributing

the video on the Internet. Plaintiff complained that UTHSC-H did nothing to correct this conduct.

28.     Plaintiff further complained of a hostile work environment created by UTHSC-H since nothing was done to correct the pornography she discovered, and because it appeared to her that everything was being covered-up. Plaintiff noted the disparity in the treatment of women.

29.     Plaintiff confirmed that she "opted out of doing further investigation because the University forces <u>me</u> to view pornography, has taken no action to remedy the problem, and now appears to just want to sweep it under the rug." Plaintiff also iterated that UTHSC-H's track record of "doing nothing" about the pornography implicitly endorses the use of state resources for unsavory and possibly illegal activity.

30.     What is perhaps most shocking is that Willerson and Yudof were told in the letter that Plaintiff had initially only sampled a small population in finding what she did, and that she possessed data run on September 3, 2003 which revealed a much larger population of employees having viewed various types of pornography, including "horrific" videos of deviant intercourse, mostly involving women and girls being violated.

31.     McKinney ignored the evidence, according to Plaintiff's letter, and Willerson and Yudof were asked to view the data so that further action could be taken. As set forth below, neither Willerson nor Yudof visited with Plaintiff, either in person, via email, or via telephone, after receiving her letter.

32.     Plaintiff went on to complain that her health suffered as a result of the attacks to her reputation and the mishandling of the investigation by McKinney.

33.     Other matters of serious public concern contained in the letter include McKinney and Willerson's abuse of power, violating Audit Committee rules and regulations which strive to maintain the integrity of the Audit function, favoring Caucasian male employees, and hiring certain executive vice presidents and others at exorbitant salaries due to political favoritism and <u>not</u> performance or value to UTHSC-H.

34.     Plaintiff concluded her letter by confessing that she no longer had any confidence that UTHSC-H or UT-System could investigate themselves, and so she turned over many of her complaints to the Federal Bureau of Investigation and the Equal Employment Opportunity Commission.   Plaintiff closed by asking for a meeting with Willerson and Yudof.

35.     Willerson did not reply for more than two (2) weeks.   In the response which was made by letter dated October 31, 2003, Willerson stated that he was unable to "address the previous situations" of pornography since he "had little involvement."   He then stated that he intended to hold "all faculty, staff, and students responsible for compliance with applicable policies, rules and regulation," and that the decision was made to "counsel those involved and place reprimands in their files."

36.     Willerson wholly failed to address, investigate, research, or reply to Plaintiff's allegations of discrimination, disparate treatment of women, favoritism to Caucasian males,

or political favoritism.

37.     However, Willerson confirmed that based upon Plaintiff's complaints he contacted UTPD Chief Charles Price ("Price") to continue the investigation.  He confirmed that UTPD was working with the FBI in this regard.  However, as it turns out, the FBI looked only into whether child pornography appeared on various computers.  Eventually, the FBI had trouble determining whether certain materials constituted "child pornography," and closed the file.  UTHSC-H apparently deemed this a victory and did not address any of the other issues raised by Plaintiff, including the pediatric dentist's conduct outlined above.

38.     In her complaint letter, Plaintiff asked to meet with Willerson and Yudof; however, such a meeting was rejected by Willerson.  Instead, Willerson stated that he wanted to set up a meeting with McKinney, Corum, and himself as soon as McKinney returned from out of town.  Consistent with UTHSC-H and UT-System's prior conduct, Plaintiff never received a call from McKinney, Willerson, or Yudof to schedule any meeting thereafter.

39.     Within a week of the response from Willerson, and in retaliation for having spoken out against Willerson, McKinney and UTHSC-H, Plaintiff is told on November 5, 2003 that the newly created Assistant Director of Audit position has "been placed on hold" pending further review of the Audit department.  This happened despite the need for the position, Corum's immediate desire to hire a qualified candidate such as Plaintiff for the job, and UTHSC-H's recent decision to waive a search committee to hire for the position.

10

40.     At the end of November 2003, and in retaliation for having spoken out on matters of public concern, Plaintiff was constructively discharged by Defendants based upon the following facts: 1) her promotion to Assistant Director of Audit was canceled; 2) her abilities as an auditor had been unjustifiably attacked; 3) her reputation besmirched; 4) UTHSC-H would not meet with her to discuss the very serious matters of public concern raised in her October 12, 2003 letter; 5) her emotional health was declining; 6) McKinney stated in various meetings that Plaintiff's time with Audit was "short" and other words to that effect; 7) McKinney was attempting via unethical means (including interfering with the Peer Review of the Audit department) to out source the entire Audit department; and 8) Chaffin, who had been communicating with McKinney on these matters during this period of time, told Corum to terminate Plaintiff. This was communicated to Plaintiff.

41.     Plaintiff conveyed her involuntary resignation/constructive discharge to Corum on or about November 24, 2003, and to Willerson on or about December 4, 2003.

42.     Neither Willerson nor McKinney contacted Plaintiff after her separation to request her attendance at any meeting as Willerson had previously promised in his October 31 letter.

43.     Plaintiff attempted to grieve her separation, but UTHSC-H and UT-System said that no grievance process was available to her. However, UTHSC-H said that it would schedule a meeting with Plaintiff to discuss her concerns, but not if she was represented by counsel at such a meeting. In effect, she could attend alone or UTHSC-H was not interested

in hearing what she had to say. UTHSC-H indicated that it was investigating her allegations, including those of wrongful termination, but to date Plaintiff has heard nothing about the alleged investigation or the results therefrom.

### D.  Cause of Action: First Amendment/Free Speech Retaliation

44.     Plaintiff incorporates herein all facts set forth above.

45.     Defendants UT-System, Regents, UTHSC-H, McKinney, individually and in his official capacity, and Chaffin, individually and in his official capacity, violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. §1983.

46.     All retaliatory acts alleged against McKinney and Chaffin, policy makers and final decision makers at UTHSC-H and UT-System respectively, were taken under color of the laws and regulations of the State of Texas.  McKinney and Chaffin created a an environment so intolerable that any reasonable employee in Plaintiff's position would have felt compelled to resign. McKinney and Chaffin openly discussed that each wanted Plaintiff terminated, that her time was "short" at UTHSC-H, and her promotional opportunity was taken away, she was humiliated, ostracized, blamed, and had her reputation slandered due to her having engaged in free speech.

47.     Plaintiff's actions and statements involved matters of serious political, social, and public concern and are constitutionally protected under the First Amendment.  As set forth above in greater detail, Plaintiff commented upon, among other things, official abuse

12

and oppression, suppressing evidence of a crime (possessing child pornography), using state resources to view illicit pornography and child pornography, political favoritism, and discrimination.

48.     Plaintiff's right to take the action she did, and make the statements she made, outweighs any interest of the government in promoting the efficient operation and administration of its services.  Plaintiff spoke out in her capacity as a citizen of the State of Texas, including her complaints made to Willerson, Yudof, and the FBI.

49.     Plaintiff's speech was a motivating factor in Defendants' constructive discharge of her.  Defendants acted intentionally to chill Plaintiff's speech, discredit her by damaging her reputation, and punish her for exercising her right to free speech.

<u>E.  Damages</u>

50.     Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendants described herein above:

        a.     As against the entities and persons in their official capacities, Plaintiff seeks prospective equitable relief, including reinstatement to the position of Assistant Director of Audit for UTHSC-H or an equivalent position (or an equivalent monetary benefit in lieu thereof) and the issuance of an injunction proscribing retaliation;

        b.     As against the individual Defendants in their individual capacities, Plaintiff seeks past lost wages and other money damages, including lost health and retirement benefits, lost promotional opportunities, loss of earning potential/capacity, compensation for past and future emotional pain and suffering, mental anguish, loss of enjoyment of life, embarrassment, humiliation, medical costs, damage to her reputation, and related damages;

13

c.    As against all Defendants, reasonable and necessary attorney's fees, costs, and expenses incurred by or on behalf of Plaintiff, including all fees necessary in the event of an appeal of this cause to the Fifth Circuit Court of Appeals and the Supreme Court of the United States, as the Court deems equitable and just;

d.    As against all Defendants, pre- and post-judgment interest at the highest legal rate;

e.    Plaintiff also seeks punitive damages against the individual Defendants in their individual capacities as their retaliatory acts were committed with malice and/or reckless indifference to the well known and protected rights of Plaintiff.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Cynthia M. Davis, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for all damages set forth above, and for such other and further relief to which the Plaintiff may be justly entitled at law or in equity.

**Plaintiff demands a trial by jury.**

Respectfully submitted,

SHELLIST, LORE & LAZARZ, LTD., L.L.P.

By:_____

MARTIN A. SHELLIST
TBA #00786487
3/D International Tower
1900 W. Loop South, Suite 1910
Houston, Texas  77027
Tel: (713) 621-2277 Fax: (713) 621-0993

*ATTORNEYS FOR PLAINTIFF,*
*CYNTHIA M. DAVIS*

14

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**H-05-1719**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CYNTHIA M. DAVIS, | THE UNIVERSITY OF TEXAS SYSTEM, et al. |

**(b)** County of Residence of First Listed Plaintiff   Harris County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

MAY 1 2 2005

MICHAEL N. MILBY, CLERK OF COURT

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
MARTIN A. SHELLIST
SHELLIST, LORE & LAZARZ, LTD. LLP
3D/International Tower
1900 West Loop South, Suite 1910 Houston, Texas 77027

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
FIRST AMENDMENT OF U.S. CONSTITUTION; 47 U.S.C. §1983

Brief description of cause:
FREE SPEECH RETALIATION

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE                          DOCKET NUMBER

DATE
5/12/05

SIGNATURE OF ATTORNEY OF RECORD
Martin A. Shellist

FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

Ck 1080